is 410-0860. That's in re Marriage of Labroo. And for the appellant we have Jess Gilsdorf for the appellee Andrew Mays. You may proceed. Good afternoon, Justices. At the onset, Justices, I would consider making a motion to have Mr. Mays leave the room so that we can discuss the case for about 5 or 10 minutes. When he comes back in, we'll tell him what we said. When Justice Steigman laughs at that, Justice Cook has a smile on his face. It's laughable. But you know something? That sums up this case succinctly. That's what happened here. Mr. Drescher, and I want to be clear also at the outset here. Judge Bailey, I am not picking on him personally. I think he's a man of fine character. I think he made a mistake. He made a mistake in allowing Mr. Drescher to send these e-mails. They constitute expert at communications under the definition for blacks. They clearly pertain to the case and particularly refer to things such as having Mr. Labroo's house sold as partial stating he's still behind in child support, stating that when Mr. Drescher contacted him that basically Dr. Labroo was sarcastic, things of that nature. When we talk about those, I pick on the sarcastic thing particularly because obviously Mr. Drescher is not going to ever come into court to testify about sarcastic responses from Dr. Labroo. He wouldn't be permitted to do it. But obviously when people hear those types of things, it is something that's going to have an obvious effect of swaying a person against them, particularly when somebody is saying, as in this case if I were to say to any of the justices here, this man's not following your order. When I mention it to him, I get a sarcastic response. Is the question here payment of child support? The question in part is payment of child support, yes. Do you dispute that child support was not paid? The child support at the time was not paid. It has been subsequently paid. So your complaint is the way the court found out about that? That is part of the complaint and also the complaint is that counsel is obviously having expert at communications with the judge. And I understand what you're saying, Justice Cook. I think I know where you're going. Well, if there's no harm in the end, why are we here? But the simple fact of the matter is that, number one, we are here because Dr. Labroo is entitled to a fair and impartial judge. And I get very concerned because this did come up, and particularly the sale of the house came up in the emails. And part of Judge Bailey's ruling and part of his arguments were that my client is living in this excessive house, this expensive house. And that was something that he actually mentioned in making one of his oral findings. The simple fact of the matter is Dr. Labroo is entitled, as a matter of constitutional due process, to a fair and impartial judge. And as you gentlemen all found somewhat laughable the initial suggestion that we ask counsel to leave the room, it is the same here. We have to continue to work with Judge Bailey, and the concept that he should be getting notices and suggestions from counsel and sarcastic responses and things of that nature should be brought up to his attention. It is not evidence. It is not proper evidence, especially when it's coming from Mr. Drescher. And it's something that would never come into court but has the obvious effect of inflaming the judge against Dr. Labroo. Now Dr. Labroo is not enough to inflame him. Has the obvious effect. Why is that so obvious? Why would you think the court can't separate out statements that have nothing to do with facts? Clearly just opinions expressed by someone who has a stake in the litigation. Why would I think that? Because I believe that when you have a series of letters coming in, there's a concept, and we say this, the bell cannot be unrung. The judge shouldn't be hearing any of that in the first place. And the reason that it is not considered evidence is because it is not proper to be considered in the case whatsoever. But did not the court outline the procedure where it would accept letters regarding the support payments and past payment of attorney fees? Judge Bailey absolutely said yes, he wanted to be hearing from counsel on this basis. But that doesn't end the discussion. That was in August of 2009? I believe it was in August of 2009. Where he said he wanted to be informed in the fashion that he subsequently was informed about any problems? That's correct. Did you file a motion to reconsider? At the time, I was not Dr. Labroo's counsel at that time. Did Dr. Labroo file a motion to reconsider? No, he did not. Did he seek to appeal that order? No, he did not. So he's attacking the order after the fact, having failed to do any of that? Well, he's not attacking the order, he's attacking the facts. Well, the order said to Sharon Labroo to proceed in this fashion, isn't it? That's correct. So by proceeding in this fashion, and of course with the order, he's attacking the order that permitted her to do it, is he not? Well, it could be stated that. That's what I'm stating, am I correct? No. What he is attacking is the ex-parte communications themselves, which should not have been allowed or initiated per the rule. Supreme Court Rule 63 clearly states that it shall not permit ex-parte communications, shall not initiate them, and certainly shall not consider them. Clearly, that has all happened here. Justice Bader, do you judge me? Is it really ex-parte, though, if your client's getting copies? Well, again, at the start of this, I asked that counsel leave. I said we'd tell you everything that was said, and we could tell him that. And, of course, we all found it laughable because it is. You know, when you make a ridiculous argument like that that's not related at all to the case we have before us, it makes me think you don't have anything to argue. Well, this is like saying this case is like the moon going around Saturn or something like that. Justice Cook, the only difference between what I suggested in this case is one was sent via e-mails, and what I suggested is that we would tell them orally. Other than that, it's the exact same scenario. Judge Bailey was receiving communications relating to this case from Mr. Drescher, specifically going so far as to discuss trial tactics and what they were going to ask for in the future. If Mr. Drescher had done this in the form of a motion, everything would have been fine, right? No, everything would not have been fine. Because, number one, several of the things that I speak of, and I will again refer back to the concept of sarcastic responses between counsel when he's trying to engage in settlement. You've never seen a sarcastic motion? How about a sarcastic argument, which you made right here? No, sir, I respectfully would never make a sarcastic argument to this court. I'm just trying to point out that, in fact, this would not be something that the court here would countenance and nor should it allow down there. But the real issue here, when we look at this further, is not whether there's any... The real issue when it comes down to is this, is would there be a reason to believe that Judge Bailey would not act impartially in this manner? And that is an objective test. It does not rely on the facts of the case. It's an objective test. Any justice or any judge who is receiving information about a case through ex parte channels should, in fact, be recusing themselves from the case. Because they should not be prejudging or pre-hearing things. This goes to the core of our whole system. If we get to the point... If you wanted to get a judge out of the case, all you have to do is send him an ex parte letter. Bam, he's out of the case. No, that would be something that people do do. People send judges and justices ex parte materials all the time. And the common practice that I've seen is that, A, they're not read. B, usually their clerk sifts through them and sifts them out. C, they send them back. And very often they inform both counsels. We've received these types of letters. And we did not read them. We did not consider them. We didn't move them. But go back to what you said about the motion. Respectfully, sir, when somebody files a motion, number one, it is subject to 137 sanctions. It has to be a good faith pleading. It is something that is part of the public court record. Until, and as far as I can tell, until we filed our motion, until we started moving forward, there would be nothing to require these e-mails to be made part of the public record. Our system involves one of openness and government in which individuals are able to come to court and able to see what occurs, able to see what happens, able to see the evidence that's presented. So when you say an emotion to motion is a public document, once it's there, individuals can pull it out and say, hey, look at this. This is legally deficient. This is lacking in substance. This person should be sanctioned for filing these things. None of those things apply here. And again, it cuts to the heart of our system. We only publicly file those documents, and they're there for the public review. When we start allowing judges to engage in, and I'm not saying Judge Bailey. Please, I want to make sure we're clear from that. If we start allowing judges to just engage in backdoor or backroom deal cutting or listening to what's going on and then say, well, there's no harm, well, yes, there is. Our system is public. Evidence is subject to cross-examination. Evidence is something that we present, people get to hear, and people get to decide. If we go back to the backdoor room, the old phrase that we always hear, even from law school, is we go back to star chamber. Well, we don't have star chamber in this country. We have public courtrooms that are open for people to see what's occurring. I think, again, the test is objective. Would a person be reasonably able to question the impartiality of a judge or a justice who is receiving these things? I think the answer to that is yes. We would respectfully ask the court to grant our motion and direct that the matter be remanded and that a different judge be assigned. Thank you, counsel. You will have rebuttal. Mr. Mace. Thank you. May it please the court, counsel, I want to correct Mr. Gilsdorf on one issue. The August of 2009 order was, in fact, appealed. It was case number 4090748. It was a different issue. This specific procedure was not raised at that. Based on that, we would pass it as waived. That was what I took from counsel anyway in his response to Justice Steinman. There is no ex parte communication here. The letters that Mr. Drescher sent to both the court file that were made part of the public court record and to Dr. LaBru, after counsel was retained, sent directly to Mr. Gilsdorf, do not constitute ex parte communication. Did you agree it's somewhat out of the ordinary for a judge to tell a party to send it letters, and then based upon those letters, subsequent hearings will be scheduled? I would agree it's an extraordinary procedure that's set up. I believe this is a bit of an unusual case because there have been so many repeated petitions for contempt based on failure to pay child support and maintenance as ordered. Dr. LaBru has rarely, if ever, before this motion for substitution of judge, paid the proper amount at the proper time to Sharon LaBru. So why doesn't Judge Bailey put him in jail? We have asked him to do that repeatedly. I don't know. Tell him the inquiry came from the bench at the appellate court, wondering why in the world Dr. LaBru isn't behind bars. I will ask him that. As opposed to entering strange orders like this one. We will ask him that. If you're going to ask him that, you probably better notice it up for hearing. It will be done in the proper form. Absent an ex parte communication, there's no violation of the Code of Judicial Ethics. If an individual brings an argument for a substitution of judge for a cause that's not based on a violation of the Code of Judicial Ethics, they require a showing of actual bias. Dr. LaBru has failed to do that. He can't do that. Judge Bailey has bent over backwards. As Justice Steigman said, Dr. LaBru has never spent even an hour in the custody of the Adams County Sheriff based on his failure to pay. Judge Bailey has given him multiple second chances. Every time there's an excuse for a reason that Dr. LaBru has, why he hasn't made the payment, he promises he will change eventually the payments made and then a couple of months later we file another petition for contempt. There is no showing that any actual bias has been made. There is no ex parte communication. There's no violation of the Code of Judicial Ethics. There's nothing that Dr. LaBru can show that entitles him to a change of judge for a cause. Because of all those reasons, Judge Greenleaf's order denying the motion for a substitution of judge should be affirmed. Don't you think Dr. LaBru may have a legitimate issue in his mind when he files a motion for the judge to be removed for cause and then that motion gets reassigned to a judge who has already been recused? That was an oversight. That's a pretty significant oversight though, isn't it? As I said, this is a complicated case with lots of entries in the docket entry. When Judge Greenleaf assigned Judge Wollahan to hear the case, they just made the oversight that Judge Wollahan had been removed. I would presume Judge Wollahan knew that he had been removed from the case or recused from the case. I can't say to what Judge Wollahan knew or didn't know. He obviously entered an order based on our motion to strike. After that, Mr. Gilsdorf was retained. He filed a motion to vacate. We agreed that the order striking the motion for substitution of judge should be stricken. We went back, had a hearing in front of Judge Greenleaf, and that's the order that's been appealed from now. It's the Judge Greenleaf order after the hearing on the merits for the substitution of judge. Do you have any case law that says that a communication to a court via letter, especially set up on a consistent basis, is not considered ex parte communication? None specifically to that point. There's a case that I cited in my brief, which is in remarriage of Wheatley where the U.S. congressman or former U.S. congressman sent the judge a letter. In that case, it was directed only to the presiding judge. It wasn't sent to the attorneys. The attorneys weren't made aware of that. That's different from this case where I think everybody was aware. I don't know that I would draw a distinction in this, whereas if by some chance Judge Bailey were out socially somewhere and ran into myself and Mr. Gilsdorf, if we all talked about the case, that that would not be considered ex parte. It may not be proper, but that's not what happened here. That would not be ex parte because all of the parties were involved in that. That's the same situation here when the correspondence is directed to all parties and made part of the public court record. Okay. Thank you, counsel. Rebuttal, please. Rebuttal would be very limited. I think even if we had conversations in public, we would not have conversations one-sided with one person speaking to the judge in a public restaurant or something about a case and then saying, well, I'm going to go tell the other side now. I don't think anybody would find that to be proper. The only other thing I would have to say again, Justice Cook, I am not trying to be sarcastic ever with this panel. I may have been making an argument that you may have found absurd or strange. I hope you wouldn't, but coming here to be sarcastic was not the plan for the day. Thank you, counsel. Thank you. The case is submitted. The court stands in the recess.